RECEIVED
JUL 24 2006
Property of U.S. District Court
District of Rhode Island

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND PUBLIC INTEREST RESEARCH GROUP, TOXICS ACTION CENTER, and SIERRA CLUB,

Plaintiffs,

Civil No. 05-363T

v.

BRADFORD DYEING ASSOCIATION, INC.,

Defendant.

# CONSENT DECREE AND ORDER

Upon consideration of the Motion for Entry of Consent Decree and Order filed by the parties, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

## I. BACKGROUND

1. Rhode Island Public Interest Research Group, Toxics Action Center, and Sierra Club (collectively, "Plaintiffs") brought this suit against Bradford Dyeing Association, Inc. ("BDA") under the federal Clean Air Act (the "CAA"), 42 U.S.C. § 7401, *et seq.*, and the federal Clean Water Act (the "CWA"), 33 U.S.C. § 1251, *et seq*.

2. The parties recognize and the Court, by entering this Consent Decree and Order (the "Decree"), finds that this Decree has been negotiated by the parties in good faith; settlement will avoid continued litigation between the parties; settlement of this matter is in the public interest and in accordance with the CAA and CWA, and entry of this Decree is fair and reasonable.

3. On the date this Decree was filed, the parties provided a copy of this Decree to the United States Environmental Protection Agency and to the United States Department of Justice, consistent with the requirements of 42 U.S.C. § 7604(c)(3) and 33 U.S.C. § 1365(c)(3).

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the parties and subject matter of this Decree pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 7604, and 33 U.S.C. § 1365. Venue is proper in this Court pursuant to 42 U.S.C. § 7604(c), 33 U.S.C. § 1365(c), and 28 U.S.C. §§ 1391(b) and (c).

## III. APPLICABILITY

5. The provisions of this Decree shall apply to and be binding upon the parties and their respective officers, directors, shareholders, successors, affiliates, heirs and assigns. In the event BDA proposes to sell or transfer its legal or equitable interest in its Bradford, RI, facility before the termination of this Decree, it shall advise the proposed purchaser or successor-in-interest of the existence of this Decree, and shall condition the sale or transfer on the purchaser's or successor-in-interest's agreement to comply with the terms hereof.

6. Definitions. For the purposes of this Decree, the following terms shall have the following meanings:

"Month" means calendar month.

"Odor Limit" means General Condition Q of BDA's Title V operating permit and any such provision in future Title V permits, and Rhode Island Air Pollution Control Reg. No. 17.

"Opacity Limit" means General Condition R of BDA's Title V operating permit and any such provision in future Title V permits, and Rhode Island Air Pollution Control Reg. No. 1.

"Narrative limits" means limit I.A.10.b (relating to visible discoloration of receiving waters) and I.A.10.c. (relating to visible oil sheen, foam and floating solids) in BDA's Rhode Island Pollutant Discharge Elimination System ("RIPDES") permit, and any future permits with such provisions.

"Operating time" means the period of time that an emission unit was running and generating air emissions to the atmosphere.

## IV. COMPLIANCE

AIR EMISSIONS

Opacity

7. (a) Beginning on the earlier of (i) the first day of the month following the completion of the Boiler Opacity Work detailed in Paragraph 8(a), or (ii) the first day of the month following 150 days after the entry of this Decree, emissions from BDA's boilers and main stack shall comply with the Opacity Limit as compliance is defined in paragraph 8(d).

(b) Beginning on the first day of the month following entry of this Decree, emissions from Emission Units P401, P402, P403, P501, P502, P503, P504, P508, P901, P902, and P903 shall comply with the Opacity Limit.

(c) Beginning on the earlier of (i) the first day of the month following the completion of the Process Emission Unit Work detailed in paragraph 9(a), or (ii) the first day of the month following 180 days after the entry of this Decree, emissions from Emission Unit P521 (also known as tenter frame No. 9) shall comply with the Opacity Limit.

8. *For emissions from the boilers and main stack:*

(a) To reduce the opacity of emissions, BDA shall upgrade its boilers and burners in accordance with the scope of work attached as Exhibit A to this Decree (the "Boiler Opacity Work"). The Boiler Opacity Work shall be completed no later than 150 days after entry of this Decree. When the Boiler Opacity Work is completed, BDA shall so certify to Plaintiffs.

(b) Beginning with the first month after entry of this Decree, BDA shall, on a monthly basis, report to Plaintiffs: (i) the date, time, duration, and percent opacity of each exceedance of

the Opacity Limit recorded by its continuous opacity monitor ("COM"); and (ii) the total operating time of its boilers, the percentage of total operating time that emissions were above 20% opacity for an aggregate of three or more minutes in any hour, and the percentage of total operating time that its COM was not operating. BDA shall perform maintenance and calibration on its COM as needed, but not less than annually. Maintenance and calibration of the COM shall be performed on-site at the BDA facility

(c) The total duration of emissions in exceedance of the Opacity Limit shall not exceed 1.5% of operating time in any month. For any month in which such emissions do exceed 1.5% of total operating time, BDA shall pay a stipulated penalty of $500 for each additional day (after the 1.5% threshold has been reached) on which emissions exceed the Opacity Limit. Payment shall be made within 30 days of submission of the monitoring report that reports the exceedance. Notwithstanding anything herein to the contrary, no stipulated penalties will be incurred prior to the earlier of (i) the first day of the month following the completion of the Boiler Opacity Work detailed in Paragraph 8(a), or (ii) the first day of the month following 150 days after the entry of this Decree.

(d) Once BDA has achieved "compliance," as defined below, with the Opacity Limit for any period of nine consecutive months beginning with the month following entry of this Decree, and has so certified to Plaintiffs, the provisions of paragraph 8(b) and 8(c) shall expire. For air emissions subject to continuous opacity monitoring, "compliance" means that the Opacity Limit has not been exceeded for more than 1.5% of operating time in a month.

9. *For emissions from Emission Units P401, P402, P403, P501, P502, P503, P504, P508, P521, P901, P902, and P903 (the "Process Emission Units"):*

(a) BDA shall install a smoke abater on Emission Unit P521, also known as tenter frame No. 9 (the "Process Emission Unit Work"). BDA shall perform the Process Emission Unit Work in accordance with the scope of work attached as Exhibit E, shall complete the Process Emission Unit Work no later than 180 days after entry of this Decree, and shall promptly notify Plaintiffs upon completion.

(b) Beginning no later than the first day of the month following the completion of the Process Emission Unit Work, all emissions from the following production lines shall be routed through a smoke abater prior to emission to the atmosphere:

(i) The application of quarpel to blended fabrics;

(ii) The curing of all printed all-synthetic fabric.

The ingredients used in these production lines have been previously provided to Plaintiffs in a document entitled "Production Lines and Ingredients Therefor Subject to Smoke Abater Control." Prior to completion of the Process Emission Unit Work and beginning no later than the date this Decree is entered, BDA shall make all reasonable efforts to route emissions from the production lines described in subparagraphs (i) and (ii), above, through BDA's existing smoke abater.

(c) Beginning with the month following entry of this Decree, emissions from the Process Emission Units shall be measured by an independent, certified Method 9 observer from CK Environmental, Inc., which shall be retained for this purpose by BDA. Method 9 observations shall be taken, unannounced, at times the plant is operating, on the following schedule: four days per month; once BDA has achieved three consecutive months with no exceedances of the Opacity Limit, three days per month; once BDA has again achieved three consecutive months with no exceedances of the Opacity Limit, two days per month. Method 9 observations shall be

taken from various locations around the BDA facility in such a manner that the Method 9 observer can observe emissions from one or more Process Emission Units at a time, provided that Method 9 observations are made for all Process Emission Units on each visit and each Unit (or combination of Units) is observed for a minimum of fifteen minutes. In the event the Method 9 observer sees discharge of visible emissions from a Process Emission Unit, the Method 9 observer shall then observe that Process Emission Unit for a minimum of thirty minutes. On a monthly basis, the Method 9 contractor shall report to Plaintiffs and BDA the date, time, location, duration, and percent opacity for each Method 9 observation.

(d) BDA shall pay a stipulated penalty of $500 for each day when there are exceedances of the Opacity Limit as established by the Method 9 observer. Payment shall be made within 30 days of submission of the monitoring report that reports the exceedance. Notwithstanding anything herein to the contrary, no stipulated penalties will be incurred in regard to emissions from Emission Unit P521 (tenter frame No. 9) prior to the earlier of (i) the first day of the month following the completion of the Process Emission Unit Work detailed in paragraph 9(a), or (ii) the first day of the month following 180 days after entry of this Decree.

(e) For each Process Emission Unit, once BDA has achieved compliance, as defined below, with the Opacity Limit for any period of nine consecutive months following entry of the Decree and has so certified to Plaintiffs, the provisions of this paragraph, with the exception of subparagraph (a), shall expire for that particular Process Emission Unit. For air emissions subject to monitoring by a certified Method 9 observer, "compliance" means that a particular Process Emission Unit's emissions must comply with the Opacity Limit during all of the Method 9 observations on that particular Unit made during nine consecutive months.

<u>Odor</u>

10. Beginning on the date this Decree is entered, emissions from BDA shall not violate the Odor Limit, or General Condition P of BDA's Title V operating permit and any such provision in future Title V permits, or Rhode Island Air Pollution Control Reg. No. 7.

11. (a) Beginning no later than the date this Decree is entered, all emissions from the production lines listed in paragraph 9(b) shall be routed as set forth in said paragraph 9(b).

(b) To reduce odor emissions, BDA agrees as follows:

(i) To perform the Process Emission Unit work. In addition, BDA has provided to Plaintiffs the opinion of John Kroehling of Industrial Air Pollution Control that BDA's existing smoke abater and BDA's new smoke abater have the capacities specified in the manufacturer's specifications, and that the capacity of each smoke abater is sufficient to ensure compliance with the Opacity Limit. In addition, BDA has provided to Plaintiffs the opinion of Mr. Kroehling that the heights and designs of the stacks that vent the emissions from the smoke abaters are sufficient to ensure adequate dispersion of odor emissions from Emission Units P504 and P521 (tenter frames Nos. 4 and 9).

(ii) BDA shall increase the height of four process stacks on the bleach house roof to a minimum of 12 feet, and shall convert four horizontal general ventilation exhausts on the bleach house to vertical stacks with a minimum height of 12 feet, so as to improve the dispersion of air emissions from the bleach house (the "Bleach House Work"). BDA shall perform the Bleach House Work in accordance with the scope of work attached as Exhibit F, shall complete the Bleach House Work no later than 70 days after entry of this Decree, and shall promptly notify Plaintiffs upon completion.

12. BDA shall pay a stipulated penalty of $1,000 for each day on which the Rhode Island Department of Environmental Management ("RIDEM") determines that there has been a violation of the Odor Limit. Payment shall be made within 30 days of such determination by RIDEM.

13. Whenever BDA receives information from RIDEM that there has been a violation of the Odor Limit, BDA shall promptly determine the cause of such odors and take reasonable steps to prevent such odors from occurring again. BDA shall report both the cause of the odor and the remedial steps taken to Plaintiffs.

14. The provisions of Paragraphs 12 and 13 shall terminate when RIDEM finds no objectionable odors beyond the BDA facility's property line during nine consecutive months following entry of this Decree. The provisions of Paragraph 10 shall terminate on the later of: (a) nine consecutive months without a determination by RIDEM that BDA violated the Odor Limit; (b) nine months from the completion of the work required by both Paragraph 11(b)(i) and 11(b)(ii); (c) one year from the date this Decree is entered. Plaintiffs may initiate enforcement of the provisions of Paragraph 10 at any time before the provisions of Paragraph 10 terminate.

WASTEWATER DISCHARGES

15. Within 30 days of the entry of this Decree, BDA shall hire an independent consultant to provide additional training to BDA employees in the operation of the facility's wastewater treatment system. Included in this training shall be written protocols on how to operate the system, a copy of which shall be provided to Plaintiffs. BDA shall follow the protocols in the operation of its wastewater treatment system.

16. BDA shall submit its monthly discharge monitoring reports and the corresponding documents entitled "Bradford Dyeing Association, Inc. Wastewater Treatment Summary Sheets" to Plaintiffs at the same time the discharge monitoring reports are submitted to RIDEM.

17. *Fecal coliform, pH, Surfactants, Lead, BOD, COD, and TSS*:

(a) BDA shall hire an independent consultant to develop recommendations as to how to achieve continuous compliance with BDA's RIPDES permit limits for fecal coliform, pH, surfactants, lead, biochemical oxygen demand (BOD), chemical oxygen demand (COD), and total suspended solids (TSS) (the "RIPDES Permit Continuous Compliance Work"). The RIPDES Permit Continuous Compliance Work shall be in accordance with the scope of work attached as Exhibit B. BDA shall complete the RIPDES Permit Continuous Compliance Work within six (6) months of entry of this Decree and shall promptly inform Plaintiffs upon such completion.

(b) Beginning on the date this Decree is entered, BDA shall comply with its RIPDES permit limits for fecal coliform, pH, surfactants, lead, BOD, COD, and TSS.

(c) For each exceedance of a permit limit for any of the parameters listed in subparagraph (a) occurring after the date this Decree is entered, BDA shall pay a stipulated penalty of $500 per day of violation for violations of a daily maximum limit (and, for pH, for violations of a daily minimum limit), and $2,000 for each violation of a monthly average limit, per 30-day period. For purposes of computing monthly average discharges of lead and surfactants, BDA may sample its effluent four times per month for lead and surfactants. Payment shall be made within 30 days of submission of the discharge monitoring reports that report the exceedance. Notwithstanding anything herein to the contrary, no stipulated penalties will be incurred prior to

(i) six (6) months from the date of entry of this Decree or (ii) completion of the RIPDES Permit Continuous Compliance Work, whichever first occurs.

18. *Narrative Limits:*

(a) Beginning on the date this Decree is entered, BDA shall comply with the Narrative Limits of its RIPDES permit.

(b) Beginning on the date this Decree is entered, once weekly, at times when the plant is discharging wastewater, BDA shall inspect the Pawcatuck River at the point of the BDA facility's outfall to determine compliance with the Narrative Limits. Any discharge of floating solids, foam, or oil sheen, and any visible discoloration of the river caused by BDA's discharge, shall constitute a violation of the Narrative Limits and shall be reported to RIDEM with BDA's discharge monitoring reports, and shall be reported to Plaintiffs at the same time.

(c) For each violation of a Narrative Limit after the date this Decree is entered, BDA shall pay a stipulated penalty of $500 per day of violation. A violation of the Narrative Limits may be established by: (a) BDA's own inspection; or (b) RIDEM or U.S. EPA. In addition, Plaintiffs may submit to BDA photographic or video evidence collected by members of the public that Plaintiffs allege constitutes a violation of the Narrative Limits. If BDA agrees the evidence constitutes evidence of a violation, BDA shall pay the stipulated penalty set forth in this paragraph. If BDA disputes that the evidence constitutes a violation of the Narrative Limits, Plaintiffs may seek to enforce this provision pursuant to Section VII of this Decree. Payment shall be made within 30 days of submission of the monitoring reports that report the violation, or within 30 days of BDA's receipt of photographic or video evidence that it agrees constitutes evidence of a violation.

19. (a) For each parameter listed in paragraphs 17 and 18, above, once BDA has complied with its RIPDES permit limits for nine consecutive months beginning with the month after this Decree is entered, and has so certified to Plaintiffs, the Decree will expire with respect to that parameter. This provision does not apply to the requirements to conduct RIPDES Continuous Compliance Work set forth in paragraph 17(a).

(b) Notwithstanding the provisions of subparagraph (a) of this paragraph, in the event that BDA's RIPDES permit is modified or reissued with effluent limitations for lead that differ from those in its current permit:

(i) Beginning with the effective date of any such modified or reissued permit, BDA shall comply with the new permit limits for lead;

(ii) BDA shall pay stipulated penalties for violations of such modified lead limits as provided in Paragraph 17(c);

(iii) This subparagraph (b) shall expire once BDA has complied with such modified lead limits for nine consecutive months. If BDA is meeting the modified lead limits before the modified limits are issued, BDA may count those months in determining the nine month consecutive compliance period.

<u>Copper</u>

20. BDA shall conduct a comprehensive study to determine the sources of copper in its wastewater and ways to reduce the amount of copper in its wastewater (the "Copper Reduction Study"). The Copper Reduction Study shall be conducted in accordance with the scope of work attached as Exhibit C. Results of the Copper Reduction Study shall be provided to Plaintiffs and RIDEM promptly upon completion. The Copper Reduction Study shall be completed within six (6) months of entry of this Decree.

21. (a) BDA shall comply with the final limits for copper imposed in any modification to or reissuance of its RIPDES Permit issued by RIDEM, upon the effective date of such modification or reissuance.

(b) From the date this Decree is entered until the effective date of any modification to the copper limit in BDA's RIPDES Permit, BDA agrees to meet an interim limit for the concentration of copper in BDA's wastewater, which shall not exceed a daily maximum of 59 micrograms per liter and shall not exceed a monthly average of 36 micrograms per liter. Sampling for copper shall be in accordance with the protocol established by BDA's RIPDES permit. For each exceedance of either the interim limit or the final modified limit for copper, BDA shall pay a stipulated penalty of $500 for each violation of the daily maximum limit, and $2,000 for each violation of the monthly average limit, per 30-day period. Payment shall be made within 30 days of submission of the discharge monitoring reports that report the exceedance. Once BDA has complied with the modified or reissued daily maximum and monthly average limits for copper for nine consecutive months, and has so certified to Plaintiffs, the provisions of the Decree with respect to copper shall expire, except for the provisions of Paragraph 20. If BDA is meeting the modified copper limits before the modified limits are issued, BDA may count those months in determining the nine month consecutive compliance period.

Toxicity

22. BDA shall conduct a Toxicity Identification Evaluation and Toxicity Reduction Evaluation (the "Toxicity Studies") on its wastewater. These studies shall be designed to identify the causes of toxicity in BDA's wastewater and the measures to reduce the toxicity of BDA's wastewater. The Toxicity Studies shall be conducted in accordance with the scope of

work attached as Exhibit D. Results of the Toxicity Studies shall be provided to Plaintiffs and RIDEM promptly upon completion. The Toxicity Studies shall be completed within six (6) months of entry of this Decree.

23. (a) Beginning the month after the completion of the Toxicity Studies and ending on the effective date of any modification or reissuance of the acute whole effluent toxicity limit for *ceriodaphnia dubia* (the "WET limit") in BDA's RIPDES permit, BDA agrees to meet an interim WET limit, which shall be an LC50 limit for *ceriodaphnia dubia* of >45%. WET testing for this interim limit shall be in accordance with the protocol established by BDA's RIPDES permit. For each exceedance of either the interim limit or the WET limit in a modified or reissued RIPDES permit, BDA shall pay a stipulated penalty of $2,500. Payment shall be made within 30 days of submission of the discharge monitoring reports that report the exceedance.

(b) BDA shall comply with the final WET limits imposed in any modification or reissuance of its RIPDES Permit issued by RIDEM, upon the effective date of such modification or reissuance. For each exceedance of the modified or reissued limit, BDA shall pay a stipulated penalty of $2,500. Payment shall be made within 30 days of submission of the discharge monitoring reports that report the exceedance. Once BDA has complied with the modified or reissued WET limit for three consecutive quarters, the provisions of this subparagraph shall expire. If BDA is meeting the modified WET limits before the modified limits are issued, BDA may count those months in determining the nine month consecutive compliance period.

24. The sampling and test results that are part of the BDA RIPDES Permit Compliance Work, the Copper Reduction Study, and Toxicity Studies, as defined in this Decree, shall not be used for or considered part of the sampling and testing done for purposes of BDA's RIPDES Permit reporting or compliance.

## V. FORCE MAJEURE

25. BDA shall take all necessary measures to avoid delays in compliance with this Decree. "Force Majeure" for the purposes of this Decree is defined as an event arising from causes beyond the control of BDA or the control of any entity controlled by BDA, including its consultants and contractors, which could not have been foreseen and prevented by the exercise of reasonable diligence, which delays or prevents the performance of any obligation under this Consent Decree. Unanticipated or increased costs, or changed financial circumstances, are not Force Majeure events.

26. If any event occurs that causes or may cause delay in the completion of any requirement of this Consent Decree, BDA shall so notify Plaintiffs in writing within 7 days of the event. The notice shall describe the bases for BDA's contention that it experienced a Force Majeure event, the causes of the event, the measures taken to prevent it, and the anticipated length of time the delay may persist. Failure to so notify shall constitute a waiver of the claim of Force Majeure as to the event in question.

27. If Plaintiffs agree that the delay has been or will be caused by circumstances beyond BDA's control and that BDA could not have foreseen and prevented such delay by the exercise of reasonable diligence, the parties shall stipulate to an extension of the timeframe(s) affected by the delay. BDA shall not be liable for stipulated penalties for such period of delay. If Plaintiffs do not agree with BDA's claim of Force Majeure, either party may submit the matter to the Court for resolution. BDA shall have the burden of proving that a delay or noncompliance is or was caused by a Force Majeure event, and of proving the duration of any such delay or noncompliance.

## VI. PAYMENT

28. Within 30 days of the Court's entry of this Decree, BDA shall pay the sum of $150,000 (the "Payment") to the following recipients in the following amounts: (i) $75,000 shall be used to create the Bradford Area Environmental Fund ("the Fund"); the Fund shall be held in escrow by Brennan, Recupero, Cascione, Scungio & McAllister, LLP, 362 Broadway, Providence, Rhode Island 02909, and shall fund environmental research, restoration, preservation, mitigation, protection and/or education projects selected by Plaintiffs and intended to benefit air quality and/or the Pawcatuck River watershed in the Bradford area; provided, that no grants from the Fund shall be paid to the Plaintiff groups; provided further, that no grants from the Fund shall be used for projects whose purpose is to document violations of environmental laws by BDA; (ii) $75,000 shall be expended by BDA on the following supplemental environmental project: installation of a low-NOx burner and flue gas recirculation system on BDA Boiler #1, which is anticipated to achieve a reduction of approximately 5% in the emission of nitrogen oxides from the BDA facility and reductions of approximately 6% in the emission of carbon dioxide and sulfur dioxide from the BDA facility; the project shall be completed no later than 150 days after entry of this Decree, in accordance with the scope of work attached as Exhibit G, and BDA shall notify Plaintiffs promptly upon completion.

29. Payments of any stipulated penalties pursuant to this Decree shall be paid to the Bradford Area Environmental Fund.

## VII. ENFORCEMENT

30. The Court shall retain jurisdiction of this case under 42 U.S.C. § 7604 and 33 U.S.C. § 1365 until the termination of the Decree in order to enforce the terms and conditions of the Decree, to modify the Decree, and to resolve any disputes arising hereunder.

## VIII. COSTS OF LITIGATION

31. Pursuant to 42 U.S.C. § 7604(d) and 33 U.S.C. § 1365(d), within 30 days of the Court's entry of this Decree, BDA will pay the following amounts to counsel for Plaintiffs for Plaintiffs' reasonable costs of litigation in this action (including reasonable attorney and expert witness fees): (a) to Brennan, Recupero, Cascione, Scungio & McAllister, LLP, 362 Broadway, Providence, Rhode Island 02909: $22,000; (b) to National Environmental Law Center, 44 Winter Street, 4th Floor, Boston, Massachusetts 02108: $191,425, (c) to David A. Nicholas, Esq., 20 Whitney Road, Newton, Massachusetts 02460: $107,000.

## IX. GENERAL PROVISIONS

32. This Decree constitutes a settlement by Plaintiffs of all claims for civil penalties and injunctive relief pursuant to the CAA and CWA for the violations alleged in the Complaint and Amended Complaint.

33. BDA shall not assert any claim of confidentiality for any documents or information it is required to report to Plaintiffs or government agencies pursuant to this Decree. Notification to Plaintiffs or to BDA shall be deemed submitted on the date it is postmarked. All correspondence concerning this Decree and all documents that are submitted pursuant to this Decree shall be addressed as follows:

As to Plaintiffs:

Joshua R. Kratka
National Environmental Law Center
44 Winter Street, 4th Floor
Boston, Massachusetts 02108

As to BDA:

Gerald J. Petros
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500

Providence, Rhode Island 02903

34. There shall be no modification of this Decree without agreement among all parties to the Decree and written approval by the Court, or by Order of the Court.

35. The effective date of this Decree shall be the date of its entry.

## X. TERMINATION

36. This Decree shall expire at such time as BDA has fulfilled all of its obligations hereunder.

## XI. CONSENT TO ENTRY OF DECREE

37. Each of the parties consents to entry of this Decree, subject to the Court's approval of this Decree. The undersigned representatives of each party certify that they are fully authorized by the party to enter into the terms and conditions of this Decree and to execute and legally bind the represented parties to it.

Judgment is hereby entered in accordance with this Consent Decree and Order this 6th day of November, 2006.

Ernest C. Torres
United States District Judge

AGREED AND CONSENTED TO THIS 20 DAY OF July, 2006.

FOR RHODE ISLAND PUBLIC INTEREST RESEARCH GROUP:

Matthew Auten

FOR BRADFORD DYEING ASSOCIATION, INC.:

Michael Grills

FOR TOXICS ACTION CENTER:

Alyssa Schuren

FOR SIERRA CLUB:

Alison Buckser

Judgment is hereby entered in accordance with this Consent Decree and Order this

______ day of __________________, 2006.

________________________________
Ernest C. Torres
United States District Judge

AGREED AND CONSENTED TO THIS 17 DAY OF July, 2006.

FOR RHODE ISLAND PUBLIC INTEREST RESEARCH GROUP:

[signature]
Matthew Auten

FOR BRADFORD DYEING ASSOCIATION, INC.:

__________________________
Michael Grills

FOR TOXICS ACTION CENTER:

__________________________
Alyssa Schuren

FOR SIERRA CLUB:

__________________________
Alison Buckser

Judgment is hereby entered in accordance with this Consent Decree and Order this

______ day of __________________, 2006.

______________________________
Ernest C. Torres
United States District Judge

AGREED AND CONSENTED TO THIS 17th DAY OF July, 2006.

FOR RHODE ISLAND PUBLIC INTEREST RESEARCH GROUP:

______________________________
Matthew Auten

FOR BRADFORD DYEING ASSOCIATION, INC.:

______________________________
Michael Grills

FOR TOXICS ACTION CENTER:

Alyssa Sl
______________________________
Alyssa Schuren

FOR SIERRA CLUB:

______________________________
Alison Buckser

Judgment is hereby entered in accordance with this Consent Decree and Order this

______ day of __________________, 2006.

______________________________
Ernest C. Torres
United States District Judge

AGREED AND CONSENTED TO THIS 17 DAY OF July, 2006.

FOR RHODE ISLAND PUBLIC INTEREST RESEARCH GROUP:

______________________________
Matthew Auten

FOR BRADFORD DYEING ASSOCIATION, INC.:

______________________________
Michael Grills

FOR TOXICS ACTION CENTER:

______________________________
Alyssa Schuren

FOR SIERRA CLUB:

______________________________
Alison Buckser